THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BEAULIEU REALTORS, INC., Defendant-Appellant.

First District (3rd Division)   No. 85—551

Opinion filed March 19, 1986.—Rehearing denied June 16, 1986.

Edward J. Egan, Ltd., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Anthony C. Sabbia, Assistant State's Attorney, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

Defendant Beaulieu Realtors, Inc. was charged in two counts with violating "An Act to prohibit the solicitation or inducement of sale or purchase of real estate ***." (Ill. Rev. Stat. 1983, ch. 38, par. 70—51 *et seq.*). Following a bench trial, Beaulieu Realtors, Inc. was convicted and fined $1,000 on each count. It appeals.

In 1983, the Northwest Neighborhood Federation, a Chicago community group, conducted an antisolicitation of real estate drive. Staff members of the federation, along with community volunteers, collected homeowners' signatures on a document entitled, "Notice Not to Solicit." Lists consisting of the names and addresses of the homeowners who wished not to be solicited to sell or list their property were compiled from that document. Members of the community then served the antisolicitation lists on various real estate firms in the area.

On September 2, 1983, flyers regarding Beaulieu's real estate services were received by two homeowners, Karen Kosik and Kurt Hedlund (complainants), who had signed the "Notice Not to Solicit" and whose names were included on the antisolicitation list. As a result of the flyers being sent to complainants, the State brought the following solicitation charges: two counts against Beaulieu and two counts each against three individual employees of Beaulieu. At the bench trial, the individual defendants moved for directed verdicts at the close of the State's case. The trial court granted the motions and dismissed the individual defendants for lack of proof of personal service.

The State presented the following witnesses: the complainants; Dan Nix, a member of the federation; and Melissa Josephs, a staff person for the federation. Both complainants testified that on September 23, 1981, they signed the "Notice Not to Solicit" and that on September 2, 1983, they received flyers regarding Beaulieu's real estate services. Nix testified that on May 16, 1983, he examined the antisolicitation list; he then signed and attached an affidavit stating that the list of names and addresses were of individuals who wished not to be solicited to sell or list their property. Nix added that the names and addresses of both complainants were included on the "Notice Not to Solicit" and whose names were included on the antisolicitation list. The State's last witness, Josephs, testified that on July 12, 1983, she delivered copies of the antisolicitation list with attached affidavits to 5341 W. Belmont, which had a sign outside identifying the business as Red Carpet, Beaulieu Realtors, Inc.

Patrick Schremp, the sole witness presented by Beaulieu, was the production manager for Harvest Club International, the company

which contracted with Beaulieu to mass mail the flyers in question. Schremp compiled a mass mailing list which included names and addresses of individuals who were to be mailed Beaulieu's flyers. Schremp testified that in July 1983, he received the antisolicitation list from Beaulieu. He then deleted from the mass mailing list a number of the names on the antisolicitation list. He later sent the mass mailing list, which included both complainants' names, to Beaulieu for editing out names not to be included. He stated that Beaulieu struck neither complainants' name from the mass mailing list. Schremp testified that no one at Beaulieu contacted him regarding any mistakes on the mass mailing list.

At the close of evidence, Beaulieu was found guilty on both counts. This appeal followed.

The issues presented for review are: (1) whether the State proved beyond a reasonable doubt that Beaulieu was properly served with the antisolicitation list; (2) whether the trial court erred in finding that the flyers constituted solicitation as opposed to advertising; and (3) whether the antisolicitation statute properly provides for the punishment of corporate entities that violate the statute.

The antisolicitation statute, section 1(d) (Ill. Rev. Stat. 1983, ch. 38, par. 70—51(d)), in pertinent part provides that:

"It shall be unlawful for any person of corporation knowingly:
   ***

(d) To solicit any owner of residential property to sell or list such residential property at any time after such person or corporation has notice that such owner does not desire to sell such residential property. For the purpose of this subsection, notice must be provided as follows:

(1) The notice may be given by the owner personally or by a third party in the owner's name, either in the form of an individual notice or a list, provided it complies with this subsection.
   ***

(3) The individual notice, or notice in the form of a list with the accompanying affidavit, shall be served personally or by certified or registered mail, return receipt requested."

Beaulieu contends that the essential question is: how is a corporation served personally under this criminal statute? The Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 107—13(b)) provides that when a corporation is charged with an offense, summons for the appearance of the corporation may be served in the manner

provided for service of summons upon a corporation in civil actions. In civil actions, service on a corporation may be made "by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State ***." (Ill. Rev. Stat. 1983, ch. 110, par. 2—204.) It follows, therefore, that service upon an officer or agent of the corporation is required for service on a corporation under the antisolicitation statute.

To establish that Beaulieu was properly served, the State presented the testimony of Josephs, who testified that she and another member of the federation delivered 20 antisolicitation lists to the Beaulieu office on a weekday during business hours. She stated that they talked with a woman who sat at the desk near the office entrance. Josephs testified that the desk had a telephone, pencils, pads of paper and receptacles for messages for employees. She stated that the woman's desk was separated from the other smaller desks which were occupied by men. Josephs testified that upon entering they: identified themselves as being from the federation; told the woman at the desk they had antisolicitation lists that were signed by members of the community who wished not to be solicited to sell or list their property; and that they wanted to deliver the lists to all the salespersons in the office. The woman then told Josephs that 20 salespersons worked there and that she would distribute the lists to them.

■■ On the basis of the foregoing, we find it reasonable to conclude that the woman with whom Josephs spoke was an employee (agent) of Beaulieu. The question now becomes whether she was employed in a position of such character that she impliedly had authority to receive notice and would be likely to inform the corporation of the service. (*Jansma Transport, Inc. v. Torino Baking Co.* (1960), 27 Ill. App. 2d 347, 352, 169 N.E.2d 829.) The uncontroverted testimony of Josephs supports an inference that the woman was employed as a receptionist or secretary at Beaulieu. Courts have found the character of these positions to be commensurate with the character of the agency required for purposes of service. *A-Z Equipment Co. v. Moody* (1980), 88 Ill. App. 3d 187, 410 N.E.2d 438; *Jansma Transport, Inc. v. Torino Baking Co.* (1960), 27 Ill. App. 2d 347, 169 N.E.2d 829.

■ There was further evidence that Beaulieu received actual notice of the lists. Schremp, the sole witness presented by Beaulieu, testified that he received the antisolicitation list from a woman named Delores from Beaulieu. According to Schremp's testimony, Beaulieu did, in fact, have the antisolicitation lists in its possession,

indicating that Beaulieu did receive notice. (*Maunder v. DeHavilland Aircraft of Canada, Ltd.* (1983), 112 Ill. App. 3d 879, 445 N.E.2d 1303.) "[U]pon receipt of written notice defendants knew precisely what [it] must not do ***." (*People v. C. Betts Realtors, Inc.* (1977), 66 Ill. 2d 144, 152, 361 N.E.2d 581.) Based on the foregoing, we hold that Beaulieu did receive proper notice that the complainants did not desire to sell or be solicited to sell their property.

■■ Beaulieu next argues that the trial court erred in finding that the flyers mailed by Beaulieu constituted solicitation, not advertising. To ascertain the difference between soliciting and advertising, we look to the definition of both terms. Advertise, which may be accomplished by statements or representations made in newspapers, radio, television or any other method of notice, is defined:

> "To advise, announce, apprise, command, give notice of, inform, make known, publish. *** Any *** statement made by the seller in any manner in connection with the solicitation of business ***." Black's Law Dictionary 50 (5th ed. 1979).

Solicit, which may be done by writing, word of mouth or any other method (*People v. Murray* (1923), 307 Ill. 349, 365, 138 N.E. 649), is defined:

> "To appeal for something; to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving; to endeavor to obtain by asking or pleading ***.
> * * *
> The term implies personal petition and importunity *addressed to a particular individual* to do some particular thing." (Emphasis added.) Black's Law Dictionary 1248-49 (5th ed. 1979).

We conclude that advertising entails giving general notice in order to attract public attention. However, solicitation is addressed to a particular individual to do some particular thing.

The flyers in question are addressed to the families at the addresses of complainants and invite them to "Talk to a Red Carpet Professional, Anthony M. Pollack," realtor associate at Beaulieu. The flyers also give the address and telephone number of Beaulieu and supply a business reply card (no postage necessary) for homeowners who are interested in receiving information regarding: (1) current value of one's home, (2) changing of residences, (3) alternative forms of financing, and (4) investment properties. The flyers further state, "let me tell you how I can help you obtain top dollar for your property. Selling homes is what I do best." Finally, it informs the homeowner to disregard the message, should his home be presently listed with another broker.

■ In applying the above-cited principles to the flyers, we hold that because the flyers go beyond merely giving notice to the public and are aimed at specific targets, they constitute solicitations. Beaulieu Realtors, Inc., initiated contact with the complainants by mailing flyers to them, inviting and encouraging them to talk to salesman, Anthony Pollack, regarding its ability to sell their homes. (See *People v. Murray* (1923), 307 Ill. 349, 138 N.E.2d 649, and *Home Indemnity Co. v. Reynolds & Co.* (1963), 38 Ill. App. 2d 358, 187 N.E.2d 274.) The trial court correctly concluded that solicitations occurred in violation of the statute.

■■ ■ Lastly, Beaulieu argues that it cannot be penalized for the violation because the statute does not provide a penalty for corporate violators. In the offense provision of the statute, section 1 (par. 70—51), the legislature used the terms "person or corporation" in defining the crime. However, in the penalty provision, section 2 (par. 70—52), the word "corporation" is omitted. Beaulieu therefore argues that the legislature did not intent a penalty for corporate violators.

The court's function in statutory interpretation is to ascertain the intent of the legislature and to give effect to it. (*People v. Rink* (1983), 97 Ill. 2d 533, 455 N.E.2d 64.) In determining the intent, we must consider the language used, the evil to be remedied and the object to be obtained. (*People v. Boykin* (1983), 94 Ill. 2d 138, 445 N.E.2d 1174; *People v. Naseef* (1984), 127 Ill. App. 3d 70, 468 N.E.2d 466.) We believe that although the legislature failed to include the word "corporation" in the penalty provision, it intended to provide the same punishment for corporate and individual violators. The fact that the offense provision covers both would indicate that for violations, both can be punished. We cannot agree that the legislature, in defining an offense, would cover the actions of two different types of violators, and establish punishment only for one of them. Construing the statute in this fashion does not give effect to the purpose of the statute, *i.e.*, to prevent "blockbusting" or "panic peddling." *People v. C. Betts Realtors, Inc.* (1977), 66 Ill. 2d 144, 361 N.E.2d 581; see also *People v. Naseef* (1984), 127 Ill. App. 3d 70, 468 N.E.2d 466.

■ Additionally, we believe the penalty provision is properly applied to corporations, because the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 1—1 *et seq.*) of which the antisolicitation statute (Ill. Rev. Stat. 1983, ch. 38, pars. 70—51 and 70—52) is a part, defines "person" to include "an individual, public or private corporation, government, partnership, or unincorporated association." (Ill.

Rev. Stat. 1983, ch. 38, par. 2—15). Beaulieu points out that section 2—.5 (Ill. Rev. Stat. 1983, ch. 38, par. 2—.5), regarding statutory definitions in the Criminal Code of 1961, permits a deviation from the section 2—15 definition of "person" when a particular context requires a different meaning. We find nothing in sections 1 (par. 70—51) and 2 (par. 70—52) which requires this. Beaulieu contends further that the use of the disjunctive, "or," marks an alternative indicating that the various members of the sentence which it connects are to be taken separately. (*Stroh v. Blackhawk Holding Corp.* (1971), 48 Ill. 2d 471, 272 N.E.2d 1.) Beaulieu's point is well taken: however, to give effect to the legislature's intent and the purpose of the statute, we must conclude that the definition of "person" includes corporations, thus rendering the penalty provision applicable to corporations. *People v. Boykin* (1983), 94 Ill. 2d 138, 445 N.E.2d 1174; *People v. Naseef* (1984), 127 Ill. App. 3d 70, 468 N.E.2d 466.

■ Lastly, Beaulieu argues that the statute is void for vagueness, in violation of the due process clause. "[A] law fails to meet the requirements of due process if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is or is not prohibited in any given case." *People v. McPherson* (1978), 65 Ill. App. 3d 772, 775, 382 N.E.2d 858.

In applying this principle to the antisolicitation statute, we find that the *McPherson* standard has been met. Specifically, this statute clearly puts a corporation on notice of what it is prohibited from doing, by providing that "[i]t shall be unlawful for any person or *corporation* *** [t]o solicit ***.*" (Ill. Rev. Stat. 1983, ch. 38, par. 70—51 *et seq.*) (Emphasis added.) It is therefore not void for vagueness in contravention of the due process clause.

For the reasons set forth above, we affirm the trial court's conviction of Beaulieu Realtors, Inc.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.