OAK PARK TRUST & SAVINGS BANK, Trustee, *et al.*, Plaintiffs-Appellants, *v.* THE TOWN OF PALATINE, Defendant-Appellee.

First District (1st Division)    No. 80-2443

Opinion filed September 28, 1981.

Ancel, Glink, Diamond, Murphy & Cope, P. C., of Chicago (Ronald M. Glink and Mary Denise Cahill, of counsel), for appellants.

Schuyler, Ballard & Cowen, of Chicago (Richard A. Cowen and Marcia E. Doane, of counsel), for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

This action for declaratory judgment was brought by the Oak Park Trust & Savings Bank, as trustee under Trust No. 7635, dated November 1, 1976, and Di Mucci Home Builders, Inc. (plaintiffs) against the town of Palatine (defendant). Plaintiffs sought a declaration of the rights of the parties with respect to the conditions required of plaintiffs by defendant in order for defendant to execute a joint application for a sewer permit. The trial court granted defendant's motion to dismiss on the grounds of mootness. Plaintiffs appeal.

Plaintiff Di Mucci Home Builders, Inc., is the beneficial owner of property held in a land trust by plaintiff Oak Park Trust & Savings Bank. This property lies in unincorporated Cook County in Palatine Township. In 1977, plaintiffs sought to build a planned unit residential and commercial complex on this site. They were therefore required to obtain sewer permits from the Metropolitan Sanitary District (District).

Pursuant to statutory authority (Ill. Rev. Stat. 1977, ch. 42, par. 326bb(7)), the District has adopted a sewer permit ordinance which provides for permits to be issued to governmental bodies and individuals jointly. The ordinance also provides for the issuance of permits to sole individuals or corporations if the property to be served lies in an unincorporated area and the township government declines to act as a joint permittee.

Plaintiffs requested defendant to execute a permit application as joint permittees with plaintiffs. On October 7, 1977, counsel for defendant sent a letter to plaintiffs which outlined the conditions defendant would require of plaintiffs for defendant to execute this joint permit application.

Plaintiffs believed these conditions to be unreasonable and beyond the scope of defendant's own regulations. Plaintiffs then filed an application with the District seeking to become a sole permittee. On February 15, 1978, this application was rejected by the chief engineer of the District. The District stated defendant had not technically "declined" to become a joint permittee as required for sole permittee status. Plaintiffs appealed from this denial to the board of commissioners of the District.

On April 5, 1978, plaintiffs filed this action for declaratory judgment seeking to declare the right to require defendant to impose only "reasonable" conditions as a prerequisite to becoming a joint permittee. In its answer, defendant admitted it sought to impose terms on plaintiffs, but denied those conditions were either unreasonable or beyond the scope of its authority.

On April 6, 1978, the board of commissioners of the District authorized the issuance of a sewer permit to plaintiffs subject to special conditions. This permit was issued on May 3, 1978. Conditions 9 and 10 of this permit provide:

"9. This Permit is issued to [plaintiffs] (referred to as Permittees) individually, at this time only, as an accommodation pending the resolution of the lawsuit entitled Oak Park Trust and Savings Bank et al. vs. Town of Palatine being No. 78 L 6961 in the Circuit Court of Cook County, Illinois, and pursuant to order of April 6, 1978 of the Board of Commissioners of The Metropolitan Sanitary District of Greater Chicago. Permittees shall use all reasonable efforts to pursue the litigation to conclusion.

Permittees, upon the conclusion of the aforesaid litigation and as an additional consideration for the issuance of this Permit, covenant and agree to comply fully with the final order of the Court in said litigation determining which conditions as set forth in a certain letter from Richard Cowen to Salvatore DiMucci, dated October 7, 1977, are reasonable to be imposed as a condition of the Township of Palatine executing the permit application as a co-permittee hereunder.

10. The issuance of this Permit shall not be construed' as the issuance of a permit to Permittees as a sole permittee pursuant to Section 2(H)5 of the Sewer Permit Ordinance."

In a supplement to their complaint, plaintiffs alleged the issuance of this permit. The supplement stated the permit was conditional and the District could revoke the permit and terminate service unless the above condition 9 was complied with. Plaintiffs also alleged the permit was issued only because plaintiffs would suffer severe financial losses unless sewer construction could commence. Further, plaintiffs alleged they would suffer severe financial losses should the permit be revoked.

On June 19, 1980, defendant moved to dismiss the complaint on the ground the issuance of the permit and subsequent sewer construction rendered the cause moot. On August 6, 1980, the trial court granted the motion to dismiss. The trial court noted that since the District had issued a sewer construction permit and substantial construction had been accomplished the District had waived its permit requirements.

In this court, plaintiffs contend their complaint stated a cause of action for declaratory judgment and was not mooted by the issuance of the allegedly conditional sewer permit.

Section 57.1(1) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par 57.1(1)) provides:

"The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the contro-

versy, of the construction of any statute, municipal ordinance, or other governmental regulation, or of any deed, will, contract or other written instrument, and a declaration of the rights of the parties interested. The foregoing enumeration does not exclude other cases of actual controversy."

In *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375-76, 362 N.E.2d 298, the supreme court stated:

"Essentially, there are two main, general requirements for standing to bring an action for declaratory relief. First, there must be an 'actual controversy.' (Ill. Rev. Stat. 1973, ch. 110, par. 57.1(1).) 'Actual' in this context does not mean that a wrong must have been committed and injury inflicted. Rather, it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events. [Citations.] The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof. [Citations.]

The second, and somewhat related requirement, is that the party seeking the declaration must be 'interested in the controversy.' (Ill. Rev. Stat. 1973, ch. 110, par. 57.1(1).) The word, 'interested' does not mean merely having a curiosity about or a concern for the outcome of the controversy. Rather, the party seeking relief must possess a personal claim, status, or right which is capable of being affected. [Citations.] The dispute must, therefore, touch the legal relations of parties who stand in a position adverse to one another."

In commenting upon the pertinent statute, the supreme court stated (*Miller v. County of Lake* (1980), 79 Ill. 2d 481, 487, 404 N.E.2d 222):

"We have concluded, in other words, that the 'actual controversy' requirement is meant merely to distinguish justiciable issues from abstract or hypothetical disputes and is not intended to prevent resolution of concrete disputes admitting of a definitive and immediate determination of the rights of the parties.' *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 452, citing *A. S. & W. Club v. Drobnick* (1962), 26 Ill. 2d 521, 524."

In addition, this court has held "[i]n searching for an 'actual controversy' we must liberally construe the declaratory judgment statute." *Northwestern University v. State of Illinois* (1977), 56 Ill. App. 3d 305, 308, 371 N.E.2d 1046, *appeal denied* (1978), 71 Ill. 2d 603.

We must first decide if an actual controversy exists between the

parties before us. Plaintiffs contend the controversy over the reasonableness of the terms proposed by defendant in its letter of October 7, 1977, still exists because their sewer permit is expressly conditioned on the outcome of the within litigation. Plaintiffs argue a dismissal of this suit without a resolution of this issue could lead to a revocation of their sewer service by the District. Thus, plaintiffs could be stranded with neither sewers nor a determination on the original dispute at issue. Therefore, argue plaintiffs, the suit was not mooted by the issuance of the permit.

Defendant, on the other hand, notes the finding by the trial judge that the District has waived its permit requirements by issuing a conditional permit unprovided for in its own ordinance. Defendant also points out the District has never indicated its intentions to revoke the sewer permit at any time throughout the three years since its issuance. Thus, argues defendant, any controversy over the permit is both speculative as to future conduct and an issue between plaintiffs and the District only. Therefore, argues defendant, no actual controversy exists between itself and plaintiffs.

It is clear an actual controversy did exist between the parties as to the reasonableness of the terms proposed by defendant at the time the suit was filed. We must therefore examine the effect of the permit issued to plaintiffs by the District.

Condition 9 of the permit expressly provides plaintiffs must accept the determination of the court on the reasonableness of the proposed conditions. Thus, the permit cannot be interpreted as a final permit. This factor distinguishes this case from *Commonwealth Edison Co. v. Pollution Control Board* (1977), 51 Ill. App. 3d 345, 367 N.E.2d 270, and *La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 121 N.E.2d 486, cited by defendant. In those cases the permits in dispute were issued during the pendency of the suit, thus mooting the actions to procure the permits. Neither permit was, however, conditional.

■■ It is significant that the District is not a party to this suit at the present time. Thus, the conclusion of the trial judge that the District waived its requirements by issuing this permit does not appear to be binding upon the District. This court has held a case is not moot where a party to the action has "the power * * * to recreate the condition as it existed at the time the litigation was commenced." (*Kern v. Chicago & Eastern Illinois R.R. Co.* (1963), 44 Ill. App. 2d 468, 477, 195 N.E.2d 197, *appeal denied* (1964), 29 Ill. 2d 625, *cert. denied* (1964), 379 U.S. 825, 13 L. Ed. 2d 35, 85 S. Ct. 51.) The permit issued here requires plaintiffs to act as joint permittees under those conditions declared by the court to be reasonable. If this cause is dismissed, plaintiffs are, in effect, returned to their position without joint permittee status. Thus, we cannot agree with the contention of defendant that the possibility that the District would revoke plaintiffs'

permit is pure speculation. On the contrary, the fact that the District has refused to issue an unconditional permit to plaintiffs demonstrates the need for a declaratory ruling by the court.

Defendant contends that even if the District should revoke the permit such action would only support the contention that the dispute is solely between plaintiffs and the District. In this regard, we find *Northwestern University v. State of Illinois* (1977), 56 Ill. App. 3d 305, case to be instructive. In *Northwestern*, the plaintiff filed for declaratory judgment alleging that a provision in its charter prohibiting liquor sales on its premises had been repealed by implication by the State legislature. The trial court concurred and the State appealed. This court found an actual controversy between the parties existed without the prerequisite of the plaintiff attempting to sell liquor in possible violation of its charter. The court stated (56 Ill. App. 3d 305, 308):

> "Plaintiff need not act at its peril prior to seeking declaratory relief. Although no wrong has yet been committed, such is not necessary to obtain declaratory relief. The mere existence of a claim, assertion or challenge to plaintiff's legal interests, in which the ripening seeds of litigation may be seen and which cast doubt, insecurity, and uncertainty upon plaintiff's rights or status damages plaintiff's pecuniary or material interests and establishes a condition of justiciability."

In the instant case, it is manifest the threat of revocation of the sewer permit could definitely place plaintiff in an adverse economic position so as to necessitate additional litigation to avert the risk of termination of the sewer service. As one purpose of the Declaratory Judgment Act is to prevent a multiplicity of suits (*Emcasco Insurance Co. v. Alvarez* (1969), 110 Ill. App. 2d 307, 313-14, 249 N.E.2d 190, *appeal denied* (1969), 41 Ill. 2d 581), we believe it proper that the rights of the parties to this action should first be determined before the road is cleared for further litigation.

We find the instant case distinguishable from *U-Haul Co. v. Town of Cicero* (1980), 87 Ill. App. 3d 915, 410 N.E.2d 286. In *U-Haul*, the plaintiff was denied a special use permit to develop his property in a desired way. He sought a declaratory judgment that such denial by the defendant was unreasonable. During the pendency of the suit, the plaintiff leased the property to a third party in a seven-year lease with two five-year optional extensions. Both the trial court and this court found this lease rendered the controversy between the parties moot. This court stated it would not be "appropriate to make a declaration of legal rights that might be implemented 7, 12 or 17 years from now * * *" due to the possibility of a wide change of circumstances during the interim. *U-Haul*, 87 Ill. App. 3d 915, 919.

Unlike the *U-Haul* plaintiff, the instant plaintiffs are not committed

to the third party in a long-term agreement. Rather, plaintiffs now have merely a temporary permit which appears to exist solely until the issues in this action are resolved. Thus, a determination of these issues would not go into effect in some long-term future, but would immediately become part of the permit pursuant to condition 9. By acting under this permit, plaintiffs did not abandon their search for joint permittee status, but merely sought to alleviate economic hardship until their dispute with defendant could be resolved.

■■ This case is also distinguishable from *Gromer Supermarket, Inc. v. Pollution Control Board* (1972), 6 Ill. App. 3d 1036, 287 N.E.2d 1, cited by defendant. In *Gromer*, the plaintiffs sought to prevent the defendant from adopting proposed regulations. Plaintiffs were granted a preliminary injunction preventing the defendant from conducting any public hearings in connection with this proposed ordinance. On appeal, this court reversed the issuance of the injunction. This court found the issue unripe for judicial determination, as it was unknown whether the defendant would ever act on the proposed regulation. (6 Ill. App. 3d 1036, 1043.) In the instant case, a controversy between plaintiffs and defendant over the terms proposed by defendant has existed ever since the parties failed to concur on the reasonableness of those terms. The permit issued by the District did not, in our opinion, alter the condition between those parties. The permit merely allowed plaintiffs to continue their development provided they agree to accept the judicial determination of the rights of the parties sought in the instant proceedings. Thus, the controversy remains ripe between plaintiffs and defendant.

We therefore conclude the controversy between these parties is not moot. Therefore the order appealed from is reversed and the cause is remanded for further proceedings.

Order reversed; cause remanded.

McGLOON and O'CONNOR, JJ., concur.